Our final argument of the morning is in Appeal No. 25-1004, John Peterson v. Douglas A. Collins. Good morning. Good morning, Your Honor. If it may please the Court, my name is Ronald Laniker and I'm here representing the appellant, John Peterson. This appeal turns on process and what process is due in the context of my client's termination as a physician from the Veterans Administration in Danville, Illinois. And what we've argued here in our brief is that that termination pursuant to 74-62 was arbitrary and capricious and as well was obtained without due process under the U.S. Constitution. And I will be going back and forth, but in turning to the arbitrary and capricious element of this, I do want to focus to some extent on this rebuttal. And just to provide the context here, my client... The rebuttal evidence? I'm sorry? Did you say the rebuttal evidence? I just want to make sure I heard you. That's correct. My client, prior to the hearing, submitted a 154-page rebuttal. The day before the hearing? That's right. And this was in reference to 21 alleged charges of substandard patient care, of which the evidence file was approximately 2,200 pages. That was in the file. And my client had submitted that at that time because he wanted to make sure that he had adequately discussed and had the ability to bring up information with regards to this evidence. Now, there were issues about him having an expert, which he was not able to have. However, he asked if it could go into evidence, his rebuttal, and the DAB said that they weren't able to do that. The problem with that as well was that he tried reading and tried to reference this 154-page rebuttal while he was on the stand as his attorney was giving him his direct. And they prevented him from adequately reviewing that, his rebuttal. Now, this is somebody who's facing 21 different charges of whatever it is. And this is a physician who's been treating people for over a period of several years. He certainly had an opportunity here to try to. It was difficult for him, and I think that the transcript bears this out, to adequately respond to what the DAB was asking him to respond to because he wasn't able to actually review his rebuttal. And his rebuttal was something that, because he wasn't able to actually reference it, in fact, they wouldn't let him read from the rebuttal or read from his, read from that. They also didn't give him a time restriction of, he had 30 seconds to review his rebuttal, and then he had to close the file and move on. Now, we're talking about patient care here, and we're talking about... But the rebuttal evidence was not, the report, it was not admitted into evidence? It was not admitted into evidence. The board did give him the opportunity to refer to it when answering the question. He referred to it briefly. However, I believe that it shows that he had trouble answering these questions with regards to this rebuttal, even though he hadn't. And his interact with his attorney was very, very brief. There wasn't even a cross-examination by the agency, and then the DAB asked him specific questions. But this gets to another issue here as far as whether he had an opportunity to respond to the charges against him. And that's where we start to talk about, he has a constitutionally protected interest in his continued employment. He knew about the Charge 1 specifications. He knew about the patients where the care was being called into question as far back as October of 2020. So by my measure, that's about nine months before the board's hearing. That is correct. So he doesn't go to the hearing without notice of what the inadequate patient care or the challenged patient care is. I don't know what the explanation is. Is there something with the lawyer? What the explanation is for turning this in the day before? I honestly, and I can't respond to that. However, I can say that he has an opportunity to be heard and has an opportunity to respond to the charges against him. He does. In the totality of the proceeding, though, he was given that opportunity. I mean, he made a choice, and maybe he was put in a bit of a bind himself with respect to his counsel. I don't know that with respect to the filing of this. But it wasn't like he showed up at the hearing and they were pop quizzing him about patient care that he wasn't on notice of. Right. But again, these are things that, you know, in the context of a physician and in the context of a patient's care, which might be a three-dimensional brick that you have to try to review, it's certainly fair for him to at least have a rebuttal and at least refer to the butthole as he's trying to respond to the board when they're bringing up questions or he's bringing things up to his attorney. And I think that's more of a procedural. But they didn't comply. They didn't comply with. With the deadline of being able to turn in the rebuttal evidence. They were given almost 90 days of opportunity to find an expert, to get that expert filed. And so they pushed, the board continued the deadline for getting those things submitted, and the day before is when this report is provided. And they said this report is not going to be admitted into evidence. Right. And I would say that even though this report is not placed into evidence, my client still would have had the right to at least refer to the report. And he was given that right. He was given the right briefly. But I believe that he testified under, during his testimony, he wasn't able to provide clear and coherent or complete answers here based upon the time that he was able to respond to that rebuttal and the actual parameters that were there to actually relate to it. And I think that, you know, again, it's something where if you're looking at the totality of the circumstances, this is somebody who's trying to respond to a lot of different things. And it's something that you have to be referring to somebody's notes. And he certainly should have had the right to at least had an opportunity to be heard with that. So regardless of whether he should have had that at that time, he certainly should have had an opportunity to at least give his evidence and have an opportunity to be heard. And I would say that that did not happen, and that was curtailed. What I've seen here is, and I, with Loudermilk, those are things that are general. You obviously do not have to have a completely rigid approach towards it. But you have to give people at least an opportunity here to review the notes and then come up with a response. And just going into the record and giving him 30 seconds and saying he had to review it and then close whatever he had done, that's not a real opportunity when we're talking about substandard care. He's got nine months to prepare. Based upon the evidence record that he has. And he did, and he tried to put that evidence, or at least orally, in the record here. And he wasn't given a proper opportunity to do that. But he's told by the board, you can read from the evidence file, but you cannot read from the rebuttal statement. And the rebuttal statement was the actual evidence that he, or the actual, his response to the charges. Just looking at the evidence file itself is not necessarily proper notice here in regards. But the notice is from the letter that outlines the specifications and the ten charges under charge one, specifications that they were going to pursue at the board hearing. And so he's on notice of what the allegations are as well as what he's going to be asked about at the hearing. So when you say lack of notice, I want to make sure I follow. Maybe I'm misstepping. I'm talking more about the opportunity to be heard here more than anything else here when I'm speaking of procedural due process. So with that, it certainly made it more difficult for him to actually respond to these charges. And regardless, we would be saying that if it was not offered in evidence, it should have been another way. But there needs to be a logical bridge here between the evidence and the conclusion here. And to that extent, the fact that a majority of these charges that had been reviewed against him, the DAB ultimately found were unsubstantiated, if he would have had an opportunity to at least review his notes and review the rebuttal, I think there certainly would have been some prejudice from that standpoint in what he would have actually been done. So the second portion of that here is when we start talking about the penalty portion of this, which we also cover in our brief, we mention, too, that the court did not actually look at the proper aggravating or mitigating circumstances here with regards to what he had actually pro-offered. And as I think the district court noted here, this is something that was less than clear here with what the DAB actually provided and with regards to what he was actually doing. So I believe I will reserve. We'll give you a minute or so on rebuttal. Okay. Is that okay? All right. Thank you. Yep. Okay. Let's hear from Secretary's Counsel, Ms. Sheehan. Good afternoon, Your Honors. May it please the Court. Alicia Sheehan on behalf of Douglas A. Collins of the United States Department of Veterans Affairs. At the heart of this appeal is Dr. Peterson's request to rewrite history based on his missed opportunities. Instead, the facts and law show that the decision of the Disciplinary Appeals Board should not be disturbed. Had it not been for the Board eliciting testimony from Dr. Peterson, he would have declined all opportunities afforded to defend himself throughout this process. The Board correctly excluded the admission of the rebuttal statement because the statement was submitted the night before the hearing on June 1, 2021. As Your Honors mentioned today, Dr. Peterson had ample opportunity or ample time to submit the rebuttal statement but chose not to. He had from November 10, 2020 until March 8, 2021 to submit exhibits. In fact, in March of 2021, the deadline to submit motions and exhibits passed without plaintiffs submitting anything, not a name of an expert, exhibit, or motion. It was not until the night before the hearing on June 1 that Dr. Peterson attempted to submit a 154-page rebuttal statement. As with any court proceeding, deadlines are vital to ensure fairness, efficiency, and finality to legal proceedings. The Board clearly articulated those reasons on the record and in its written decision. Regardless, the Board allowed Dr. Peterson to use and reference the rebuttal statement to answer questions. While the document was excluded, the information therein was not. To allow Dr. Peterson to read directly from an untimely and inadmissible document would unfairly prejudice the VA with little to no ability to cross-examine or investigate the information contained in the rebuttal statement, hallmarks of the adversarial process. Moreover, as we typically see in court proceedings, witnesses are not allowed to read directly from inadmissible documents when testifying. They must testify on their own ability. Who is to say what testimony is truly Dr. Peterson's if not in his own words? It therefore cannot be said that the Board lacked a rational basis for its decision in excluding the rebuttal statement. Can I ask you as a practical matter? In civil trials, criminal trials for that matter too, it's often common when a physician is on the stand, if you need to review a course of care in some detail, it's not reasonable to ask the physician to memorize it and to come in and sit on a witness stand. So oftentimes, doctors will say, I'm happy to answer all those questions about what I prescribed on X day or what my examination showed, but I really need my file. So you can ask me whatever questions you want and then the file is right there. The question is asked and the doctor will refer to the file. Is that in substance what was happening here? Yes, Your Honor, in two different ways. The Board allowed Dr. Peterson to look at the evidence file and at any point in time he could look at that, which included the medical records. And also they allowed Dr. Peterson to look at his rebuttal statement and refresh his recollection if he needed it and then testify on his own. Was that throughout or was it only the 30 seconds, as counsel has alluded to this morning, at the beginning? It was allowed throughout. Once Dr. Peterson was reminded that he could not read only from the rebuttal statement, he chose to not answer any more questions until the Board continued to ask him questions. You may be heading to this, but can you touch a little bit on the penalty determination? I think Judge Bruce phrased it as barely enough and it's certainly brief. While I can appreciate that this was a shorter statement about the factors that were considered, it is our position that the Board was under no obligation to make an independent assessment of the Douglas factors. There is no Seventh Circuit precedent prescribing that the Board was under an obligation to make an independent assessment. And Dr. Peterson actually cites the VA handbook as authority for such proposition. However, the VA handbook states that the agency or the VA has to make an assessment of mitigating and aggravating factors, which the VA did. So is that to say that the handbook vis-a-vis the Board, and the Board we're talking about is the DAB, Disciplinary Appeals Board, right? It only serves as a guide for the Disciplinary Appeals Board, but it's not binding? That is correct. So the handbook states that the agency, throughout its investigation, needs to make an assessment, which it did, in a very lengthy assessment of factors, which was provided to Dr. Peterson. Further, this case that Dr. Peterson cites, which is PURE IV versus the VA, is inconsistent with the law and also the Douglas case itself. The Douglas case states that only if the Board finds that the agency failed to weigh the relevant factors, or that the agency's judgment clearly exceeded the limits of reasonableness, is it appropriate for the Board then to specify how the agency's decision should be corrected to bring the penalty within the parameters of reasonableness. In addition, and this is what the Tenth Circuit case in Crezzo versus McDonald pointed out, is that the Douglas factors are not binding, and that it is applicable only to the Merit Systems Protection Board, not to the Disciplinary Appeals Board. And that is how this Court should hold as well. Even if the Board was required to ensure that the VA considered the factors, the Board sufficiently did so, and rationally connected the facts to the Board's decision to terminate Dr. Peterson's employment. And Dr. Peterson has not presented any cases that say that the Board cannot rely on the agency's decision making and the documents that they presented to the Board. At a minimum, the VA's decision should not be disturbed because the analysis of the factors is reasonably discerned, which the District Court found upon its review. I can touch for a moment. Dr. Peterson made other arguments that the Board's decision or the VA's decision was arbitrary and capricious. However, those arguments are underdeveloped, and Dr. Peterson has not shown how there was any harm for those, based on those arguments. This is the stuff like the notice of removal wasn't signed by the right person, and he didn't have a copy of all the evidence, and something about extensions of time. That is correct. Okay. I can go into those if you'd like, but propositions that are underdeveloped. That brings us to the remaining issue, that the Board and the VA provided Dr. Peterson with more than sufficient due process when removing him from federal service and revoking his privileges. Dr. Peterson's claim that he was denied due process is without merit and lacks legal and evidentiary support. Dr. Peterson has not articulated or identified any evidentiary issues that would have been resolved had the Board ruled differently. Dr. Peterson argues that he was effectively denied opportunity to defend himself, yet he was provided an opportunity at every stage from when the VA first started this investigation through the Board's decision. The Board provided him with multiple—the VA and the Board provided him opportunities to submit written and oral statements, an opportunity to appeal, an opportunity to be represented by counsel, which he was the entire time, an opportunity to retain an expert, and ample time to review the evidence. It was not until the night before that Dr. Peterson, well past the deadline, did he attempt to avail himself of the opportunity to be heard. He had over six months to prepare, and when the time came, Dr. Peterson refused to provide any testimony until the Board asked him and elicited testimony from him. What do you mean by that? Can you spell that out? What do you mean he refused? Just tell me what you mean factually, he refused. So when he first attempted to review, I think on direct examination, to review his file, but when the Board said that he was not allowed to do that, he stepped down, and the VA did not cross-examine him, but then the Board asked him to. I know what you mean. Okay. Yes. The record is clear that Dr. Peterson received more than legally sufficient due process. There are no other questions. Defendants respectfully submit that the court should affirm the district court and the decision of the Disciplinary Appeals Board. Thank you. You're quite welcome. Thanks to you, Ms. Sheehan. Ms. Flanniker, let me give you a minute for rebuttal if there's any point you want to make. Just turning back to the aggravation and mitigating circumstances, the statute states that they're asked to reasonably discern a path. However, that is not necessarily a substitute for the process being arbitrary. They still have to consider aggravating and minimum standards. And simply reiterating the agency's findings is not sufficient. It's necessary for the agency and the DAB to articulate a connection between the facts found and the choice made with regards to the penalty. Conclusory statements or just repeating a statement from prior is not sufficient. And that's not a Douglas factor. That's basically dealing with the statute. Douglas factors are guides here. But the court still has to or the DAB still has to look at the aggravating and mitigating circumstances. And that was found to be woefully insufficient. Thank you. Okay. Ms. Flanniker, thanks to you. Ms. Sheehan, again, thanks to you. And the Secretary will take the appeal under advisement. And that concludes today's arguments.